In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3958

United States of America,

Plaintiff-Appellee,

v.

Floyd Andrew Fernandes,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 3:99 CR 60--Allen Sharp, Judge.

Argued November 1, 2001--Decided November 30, 2001


   Before Flaum, Chief Judge, and Manion and
Kanne, Circuit Judges.

   Flaum, Chief Judge.  Floyd Andrew
Fernandes, a former deputy prosecutor in
South Bend, Indiana, files the instant
appeal after being found guilty of
engaging in a bribery scheme to illegally
expunge certain convictions from Indiana
residents' driving records. For the
reasons stated herein, we affirm the
ruling of the district court and the
appellant's conviction.

I.  BACKGROUND

   In 1993, Floyd Fernandes was hired to be
a deputy prosecutor by St. Joseph County
Prosecutor Michael Barnes and was
assigned to the Traffic and Misdemeanor
Division. When Fernandes was first
assigned to that division, Richard Treesh
was a fixture in Traffic Court. Treesh
owned a local insurance agency which, in
paid advertisements, promised customers
that he could help them get their
licenses back. The Treesh Agency
specialized in the representation of
motorists who had numerous (and often
serious) driving infractions. After his
hire, Fernandes was frequently seen (by
members of the Prosecutor's office) in
the corridors of the Traffic Court
talking to Treesh.

   On August 19, 1996, Michael Barnes

terminated Fernandes from his position as a deputy prosecutor. Apparently, Fernandes had been having an affair with a secretary in the Prosecutor's office. That secretary, Marianne Lizzi, and Fernandes both lied about the affair when questioned about its existence by Barnes. After an emotional meeting, Barnes asked Fernandes to leave the Prosecutor's office that day. According to Barnes, it was his practice, upon terminating an employee, to ask that employee to leave the Prosecutor's office immediately. After his termination, Fernandes returned to his office, removed some personal effects and left the building. Fernandes claims that he did not remove all of his belongings upon termination and that he expected to do so upon his return.

After Fernandes left the building, Barnes dispatched three deputy prosecutors to enter Fernandes's office to retrieve the files that Fernandes had been prosecuting. These deputies entered Fernandes's office and divided the felony files amongst themselves according to their respective schedules. The deputies left the Traffic and Misdemeanor files remaining in Fernandes's office for Dorothy Tillman-Reed, a prosecutor in that department. Before she left work on the night of August 19, Tillman-Reed entered Fernandes's office to collect the Traffic and Misdemeanor files. Upon sorting through these files, Tillman-Reed discovered a piece of paper with handwriting on it. That piece of paper contained the names of motorists who had been convicted of driving under the influence of drugs or alcohol. Corresponding dollar figures had been handwritten next to those names. Tillman-Reed also discovered faxed copies of motor vehicle reports for two convicted individuals as well as a signed expungement order. The expungement order discovered by Tillman-Reed did not contain any other information, apart from a signature. Fernandes ultimately returned to the Prosecutor's office several days later and Barnes confronted him with those materials.

On December 10, 1999, Fernandes was indicted by a federal grand jury sitting in South Bend, Indiana. Fernandes was charged with engaging in bribery and in mail fraud to deprive the citizens of St. Joseph County of his honest services.

At his trial, Fernandes moved to suppress all evidence gleaned by the government as a result of the post-termination search of his office. According to Fernandes, that search was conducted in violation of the Fourth Amendment to the Constitution. The district court denied Fernandes's motion and the government then introduced the papers found in his office into evidence.

In addition to the handwritten note found in Fernandes's office, the government presented a substantial amount of evidence against Fernandes. In particular, the jury heard how the alleged bribery scheme between Treesh and Fernandes operated. According to witnesses, Fernandes used his position as a prosecutor to gain access to drivers' files./1 Once he gained access to those files, he would fill in expungement orders./2 When these orders were drafted, Fernandes would transmit them to Treesh and a representative from his office would file them with the Bureau of Motor Vehicles in Indianapolis. For his part in the scheme, Fernandes was compensated.

The jury heard testimony from Fernandes's former wife, Constance. She testified that, in 1995, Fernandes told her that he had taken a part-time job with Treesh and that Treesh regularly called Fernandes and visited the Fernandes home. On one of those visits, Fernandes's former wife saw Treesh pass Fernandes a large sum of cash. Marianne Lizzi, Fernandes's girlfriend, also testified about Fernandes's receipt of benefits. Lizzi accompanied Fernandes on his visits to see Treesh and testified that Fernandes told her that he earned more money working with Treesh than he did (or would) as a deputy prosecutor. At the time this statement was made, Fernandes's salary exceeded $30,000 per year. The jury was also presented with evidence that Treesh provided Fernandes with gifts, merchandise, and loans.

Lastly, the government presented the jury with evidence of Fernandes's attempts to cover up his involvement in the bribery scheme. According to Marianne Lizzi, after the incriminating documents had been found in his office, Fernandes called her and asked her not to speak

with investigators. Furthermore, according to an employee with the Bureau of Motor Vehicles, after the initiation of the investigation, Fernandes called her at home and pleaded with her to destroy the expungement orders that she had received from Treesh's representative.

The jury found Fernandes guilty on all of the counts levied against him in the indictment. Fernandes has filed the instant appeal. According to Fernandes, this court should overturn his conviction for three reasons. First, Fernandes claims that the district court committed reversible error when it admitted evidence gleaned from the St. Joseph County Prosecutor's search of his office. Second, Fernandes argues that the evidence presented at trial was insufficient to support his conviction on federal bribery charges. Finally, Fernandes contends that the evidence submitted at trial was insufficient to convict him of engaging in a mail fraud scheme to deprive the citizens of St. Joseph County of his honest services.

II.  DISCUSSION

A.  Motion to Suppress

Fernandes claims that the evidence found in his office, after his termination, was the fruit of an unlawful search and, therefore, should have been suppressed by the district court. In ruling on a motion to suppress, we review questions of law de novo and questions of fact for clear error. See United States v. Gravens, 129 F.3d 974, 978 (7th Cir. 1997); United States v. Liss, 103 F.3d 617, 620 (7th Cir. 1997). "Because the resolution of a motion to suppress is necessarily fact-specific, we give special deference to the district court that heard the testimony and observed the witnesses at the suppression hearing." United States v. Stribling, 94 F.3d 321, 323 (7th Cir. 1996). Under these standards, we find that the ruling of the district court should be affirmed.

This court has held that a warrant or probable cause standard does not apply when a government employer conducts a search of its employees' offices, desks or files. Shields v. Burge, 874 F.2d 1201, 1203 (7th Cir. 1989) (citing

O'Connor v. Ortega, 480 U.S. 709 (1987) (plurality opinion)). In O'Connor, a state agency placed one of its doctor-employees on administrative leave amidst allegations of fiscal (and other) impropriety. While the doctor was on leave, the agency's officials conducted an internal investigation into the doctor's conduct and searched his office. The O'Connor plurality upheld the legality of that search, stating that to "ensure the efficient and proper operation of an agency . . ., public employers must be given wide latitude to enter employee offices for work related, non-investigatory reasons." Id. at 723. The plurality went on to state that, even in the context of an investigation, public employers should be given wider latitude to search employees' offices because "they have an interest substantially different from 'the normal need for law enforcement.'" Id. at 724 (citing New Jersey v. TLO, 469 U.S. 325, 351 (1985)). Rather than impose a warrant requirement on public agencies conducting investigatory searches of their employees' offices, the O'Connor plurality required only that such searches be "reasonable." Id. at 726. To be considered legally valid under the plurality's reasoning, a search must be reasonable in both its inception and scope. Id. A search will be justified in its inception when "the search is necessary for a noninvestigatory work-related purpose such as to receive a work-related file." Id. A search is reasonable in scope when the search methods adopted are reasonably related to the objectives of the search and are not overly intrusive in light of the alleged misconduct. Id.

This court has adopted the reasoning advanced by the plurality in O'Connor and has found that "government employers [are] subject to a reasonableness standard when they conduct[ ] workplace searches." Shields v. Burge, 874 F.2d at 1203 (internal citations omitted); Gossmeyer v. McDonald, 128 F.3d 481, 490 (7th Cir. 1997). After examining the facts contained in the record and the evidence presented at the hearing below, we conclude that the search conducted in the instant case was reasonable.

The district court heard testimony from the County Prosecutor and concluded that

the County Prosecutor undertook the search of Fernandes's office so that he or his assistants "could engage in an examination of the files and papers that were left in the office . . . occupied by Fernandes." As borne out by the record, the County Prosecutor had a policy of retrieving files from the offices of terminated employees (even before they have been afforded the opportunity to re move all of their personal effects) upon termination. The district court did not find that prosecutors initially entered Fernandes's office with knowledge of Fernandes's participation in a bribery scheme or in an effort to marshal evidence against him. In light of these facts, we agree with the district court's factual determination that the search of Fernandes's office lacked an investigatory pretext and find that it was reasonable in its inception./3 In addition, we find that the search was reasonable in its scope. Based upon the evidence presented, the prosecutors did not engage in overly intrusive or abusive tactics. Rather, as evidenced by the testimony of Tillman-Reed, the prosecutors searched only those areas that were likely to contain work-related materials. Because the search of Fernandes's office was reasonable in light of the strictures imposed by O'Connor, we affirm the district court's decision.

## B.  Sufficiency of the Evidence

Fernandes contends that the evidence was insufficient to convict him of engaging in bribery in violation of 18 U.S.C. sec. 666, and in a mail fraud scheme to defraud the citizens of St. Joseph County of his honest services. At the outset, we state that a challenge to the sufficiency of the evidence is an uphill battle, e.g., United States v. Sanchez, 251 F.3d 598, 601 (7th Cir. 2001), for we review the evidence in the light most favorable to the government, indulging all reasonable inferences that benefit the prosecution. United States v. Gardner, 238 F.3d 878, 879 (7th Cir. 2001). Furthermore, because we accord a great deal of deference to the jury's verdict, we will overturn the jury's determination "only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." United

States v. Phillips, 239 F.3d 829, 842 (7th Cir. 2001) (internal citations omitted). We have reviewed Fernandes's claims under this standard and find them to be unavailing.

1.  Bribery Conviction

Fernandes claims that there was insufficient evidence in the record to convict him under the federal bribery statute. Specifically, Fernandes argues that the government failed to establish that the "thing of value" involved in his bribery scheme was worth $5,000 or more, as required by 18 U.S.C. sec. 666(a)(1)(B)./4 From our examination of the record, it is clear that the jury was presented with ample evidence supporting Fernandes's conviction on bribery charges.

First and foremost, the jury was presented with the physical evidence retrieved from Fernandes's office. On the documents containing the names of past DUI offenders, there were handwritten figures denoting the amount of money to be paid by each individual. Those dollar amounts, when added up, exceed $5,000. Nevertheless, Fernandes claims that because several of those motorists failed to make payments (thereby lowering the amount of money received by either Fernandes or Treesh to under the $5,000 level), the jury's verdict should be overturned. We disagree. While several of the individuals listed on that incriminating document did not pay the amount listed next to their name, at least one of those individuals paid more than the figure identified. The overpayment and the existence of the list, in and of themselves, could allow a jury to conclude, beyond a reasonable doubt, that the "thing of value" in this bribery scheme exceeded $5,000.

The jury, however, was presented with more evidence supporting its conclusions about the value of the bribes received by Fernandes. For example, Marianne Lizzi testified that Fernandes told her that he made "more money working for Don Treesh than he ever would or will working for Mr. Barnes as a prosecutor." At the time of this statement, Fernandes's salary as a deputy prosecutor exceeded $30,000 per year. In addition, Fernandes's former

wife, Constance, testified that she saw Treesh pass her husband a large wad of cash that she estimated to be worth several hundred dollars. Lastly, the government presented evidence that Fernandes received a fax machine, as well as loans from Treesh. Presented with these facts, we find that a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

## 2. Mail Fraud Scheme

Fernandes next contends that the jury's finding that he engaged in a mail fraud scheme to deprive the citizens of St. Joseph County of his honest services should be overturned. According to Fernandes, the only conclusion that could possibly be drawn from the evidence presented at trial was that he failed to adhere to his ethical obligations as a lawyer. We disagree.

"To sustain a conviction for mail fraud under section 1341, the government must prove three elements: (1) the defendant participated in a scheme to defraud; (2) the defendant intended to defraud; and (3) the defendant used the mails in furtherance of this scheme." United States v. Montani, 204 F.3d 761, 769 (7th Cir. 2000). Under section 1346, the object of the mail fraud scheme, as well as the intent to defraud, may be to deprive citizens of their right to the defendant's honest services. Id.

Even a cursory review of the evidence adduced at trial supports the jury's conclusion that Fernandes participated in a scheme to deprive the citizens of St. Joseph County of his honest services. We need not repeat a lengthy recitation of the evidence presented against Fernandes to concur in the jury's finding that he used, in a willful manner, the trust attendant upon his position as deputy prosecutor for illegal ends. For example, at trial, Marianne Lizzi testified that Fernandes told her that Treesh paid him to "fix tickets." Similarly, Fernandes's former wife examined several illegally completed expungement orders and testified that they were all filled out in Fernandes's handwriting. Lastly, Fernandes's attempts to cover up his involvement in the bribery scheme

(calling a Bureau of Motor Vehicles
employee, at home, entreating her to
destroy potential evidence), dramatically
undercuts his argument that his
participation in the scheme amounted to
little more than a violation of his
ethical obligations. See, e.g., United
States v. Jackson, 886 F.2d 838, 845-46
(7th Cir. 1989) (evidence of attempts to
hide, destroy or suppress evidence can be
probative of a defendant's guilt). In
light of the considerable facts presented
at trial, we affirm the jury's verdict on
these charges as well.

III.  CONCLUSION

   For the foregoing reasons, we Affirm the
district court's ruling as well as the
jury's verdict.

FOOTNOTES

/1 A supervisor in the Traffic Violations Bureau of
the St. Joseph County Clerk's office testified
that Fernandes regularly came into her office and
gained access to motorists' files. In addition,
Fernandes used her typewriter and the materials
in her office to prepare expungement orders.
According to this witness, no other prosecutors
used the typewriter in her office to perform
these duties.

/2 Constance Fernandes identified her former hus-
band's handwriting on several of the expungement
orders.

/3 Fernandes quite rightly claims that the facts of
this case present a critical distinction to the
O'Connor case. Here, the government entity that
conducted the search of Fernandes's office was
indisputably "in the business of investigating
the violation of the criminal laws." O'Connor,
480 U.S. at 723. This distinction, however, does
not render the search of Fernandes's office
illegal. When Prosecutor Barnes ordered the
search of the office, he was not conducting a
criminal investigation. Instead, he was ordering
the retrieval of files to "ensur[e] that the work
of the agency [was] conducted in a proper and
efficient manner." Id. at 724. "Under these
circumstances, the imposition of a warrant re-
quirement would conflict with 'the common sense
realization that government offices could not
function if every employment decision became a
constitutional matter.'" Id., citing Connick v.
Myers, 461 U.S. 138, 143 (1983).

/4 That section provides that an individual shall be
liable for engaging in bribery if a government

employee or agent "corruptly . . . accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government or agency involving any thing of value of $5,000 or more."