In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3863

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ANTHONY ROBINSON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 CR 850—**John W. Darrah**, *Judge*.

ARGUED SEPTEMBER 28, 2010—DECIDED NOVEMBER 3, 2011

Before EASTERBROOK, *Chief Judge*, and SYKES and TINDER, *Circuit Judges*.

SYKES, *Circuit Judge*.  Anthony Robinson ran a cocaine-trafficking operation in the Washington Park Homes housing complex on Chicago's south side. During a traffic stop by Chicago police, he was found in possession of a large amount of cash and unsuccessfully tried to bribe one of the officers. The officer, James Weyforth, reported the attempt to his supervisor, and they devised

a sting in which Weyforth reapproached Robinson about the bribe. Robinson offered to pay Weyforth $1,000 a week to "get the heat off" his drug-selling operation.

For the next several weeks, Robinson gave Weyforth money, though in much smaller amounts than the two had discussed. So Weyforth upped the ante and offered to sell Robinson two kilos of seized cocaine at a drastically discounted price. They agreed on a time, place, and price for the deal. Robinson showed up with the money and was promptly arrested. A jury convicted him on two counts: federal-funds bribery in violation of 18 U.S.C. § 666(a)(2) and attempted possession of 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 846.

Robinson's primary argument on appeal is a challenge to the sufficiency of the evidence on two of the elements of the § 666(a) bribery offense—the "federal funds" element and the "transactional" element. The federal-funds element requires proof that the bribe was offered to influence an agent of an "organization, government, or agency" that received "[federal] benefits in excess of $10,000" in the year in which the bribe was offered. 18 U.S.C. § 666(b). The evidence is easily sufficient on this element; a city official testified that during the relevant year, the Chicago Police Department received more than $4 million in federal grant money.

The transactional element is analytically more difficult. As relevant here, it required the government to prove that Robinson offered the bribe "with intent to influence or reward" Weyforth "in connection with any business,

transaction, or series of transactions [of the Chicago Police Department] involving anything of value of $5,000 or more." *Id.* § 666(a)(2). The government's theory was that Robinson intended to influence Weyforth in connection with the Chicago Police Department's "business" of investigating drug trafficking at the Washington Park Homes and the value of this law-enforcement business exceeded the $5,000 threshold based on any of three possible measures: (1) the officers' salaries (well over $5,000); (2) the amount of the bribe (an open-ended offer of $1,000 per week); or (3) the estimated value of an illicit "license" to sell cocaine (well over $5,000 in ill-gotten gains).

This unusual conceptualization of the transactional element requires us to decide whether the federal-funds bribery statute covers bribes offered to influence intangible and hard-to-quantify "business" like law-enforcement. We conclude that whatever its outer limits, the statutory phrase "*any* business . . . involving *anything* of value of $5,000 or more" is broad enough to cover the law-enforcement activities of a police department that receives federal aid. Bribing a police officer to refrain from enforcing the law falls within the scope of § 666(a). We also conclude that the evidence was sufficient to satisfy the $5,000 minimum.

## I. Background

Chicago police suspected that Robinson was part of a cocaine-trafficking ring at the Washington Park Homes housing project. On March 23, 2006, Officer Weyforth

spotted Robinson driving in the area and conducted a pretextual traffic stop. Robinson's cousin Darryl Bennett was in the car with him. The stop did not bear much fruit; the two had $3,800 in cash in their possession but no drugs. During the booking process, Robinson suggested that Weyforth keep half of the cash for himself, return the other half to Robinson, and everything would "be all good." Weyforth declined the bribe and inventoried the money. He then reported the incident to his supervisor. After Robinson was released, the police devised a sting in which Weyforth would pose as a corrupt officer and reestablish contact with Robinson.

Weyforth arranged to meet with Robinson and Bennett on March 29. At the meeting Robinson offered to pay Weyforth $1,000 a week to "get the heat off" his drug-selling activity at the Washington Park Homes. Weyforth agreed. They also discussed whether Weyforth could sell Robinson quantities of cocaine seized by Chicago police, although no agreement on this subject was reached at that time.

Over the next several weeks, Bennett paid Weyworth on Robinson's behalf, but far less than the agreed-upon amount. Robinson met with Weyforth again on April 29. By this time Robinson had paid Weyforth only about $1,000. Weyforth told Robinson he would soon be able to supply him with one or two kilograms of seized cocaine at $5,000 per kilo, a dramatically discounted price. In several taped telephone conversations, Robinson confirmed that he wanted to buy the discounted cocaine.

Weyforth said he needed some cash up front. They agreed that on May 3 Weyforth would deliver two kilos of cocaine to Robinson in a hotel parking lot; Robinson would pay $5,000 at the time of delivery and another $5,000 later. The transaction took place as planned on May 3. Robinson gave Weyforth $5,000 in exchange for two bricks of "prop" cocaine. Officers moved in and made the arrest.

Robinson was indicted on two counts: federal-funds bribery in violation of 18 U.S.C. § 666(a)(2) and attempt to possess 500 grams of cocaine with intent to distribute in violation of 21 U.S.C. § 846. Robinson testified at trial and admitted the conduct described above. He claimed, however, that he participated in the scheme out of fear that Weyforth would "put a slab on" him; in other words, that Weyforth would plant drugs on him and then arrest him. Robinson asked for a jury instruction on the coercion theory of defense. The judge agreed that Robinson's testimony was enough to support giving a coercion instruction.

The jury convicted Robinson on both counts. Six days after the trial, the district court posted a copy of the jury instructions on its electronic docket, but the uploaded copy omitted the coercion instruction. The judge sentenced Robinson to 30 years in prison on the drug-possession count and 10 years on the bribery count, to run concurrently.

## II.  Discussion

Robinson's first argument pertains to the district court's handling of the jury instructions—specifically, the omission of the coercion instruction from the copy of the instructions posted on the court's electronic docket. He also challenges the sufficiency of the evidence on his bribery conviction on two elements of the § 666(a) offense: the "federal funds" element and the "transactional" element.

## A.  Coercion Instruction

Robinson's complaint about the district court's handling of the coercion instruction is new on appeal, so our review is for plain error. FED. R. CRIM. P. 51(b). Robinson "must establish that the court plainly erred and that the error affected his substantial rights." *United States v. Sykes*, 614 F.3d 303, 312 (7th Cir. 2010). Even if he makes this showing, the decision whether to correct the error is discretionary; we will do so only if it seriously affected the fairness or integrity of the proceedings.[1] *Id.*

---

[1] Robinson unpersuasively argues that the forfeiture rule does not apply in this situation. Rule 51(b) of the Federal Rules of Criminal Procedure contains an exception "[i]f a party does not have an opportunity to object to a ruling or order," but this exception does not apply when a defendant could have objected in enough time "to enable the district court to correct its error in a timely manner." *See United States v. Castillo*, 430 F.3d 230, 242 (5th Cir. 2005). Here, Robinson could have

(continued...)

Over the government's objection, the district court granted Robinson's request to instruct the jury on the defense of coercion, and the court's oral instructions included the pattern instruction on the defense. Six days after trial, however, the court posted a copy of the jury instructions onto its electronic docket, and the uploaded copy did not include the coercion instruction. Robinson maintains that the omission of the coercion instruction from the electronic docket means that the jury must not have received it in written form. This inferential leap is unwarranted.

We note first that there are a number of facts casting doubt on Robinson's claim that the uploaded copy of the instructions was the same copy that was given to the jury. The uploaded set is missing page 19, which is where the coercion instruction should have been, but the jury never asked the judge about a missing page, as would be expected if a page was indeed missing from the copy that went to the jury room. In addition, the verdict form at the end of the uploaded set contains a handwritten "x" on the line regarding the amount of cocaine involved in Count II; the verdict form actually returned by the jury contained a check mark, not an "x." These discrepancies suggest that the copy of the instruc-

---

[1] (...continued)
objected and timely preserved his claim of error once the clerk uploaded the instructions to the electronic docket. *See* FED. R. CRIM. P. 33(b)(2) (motion for new trial timely if filed within 14 days of the verdict).

tions and verdict form posted to the court's electronic docket might have been separate copies.

The most we can say on this point is that the record is inconclusive. We cannot tell whether the written copy of the instructions that was sent to the jury actually omitted the coercion instruction. Accordingly, there is no basis to infer that any mistake occurred, let alone a mistake on the level of plain error.

Even if there was an error, it would not support reversal. The judge read the coercion instruction to the jury. And the government persuasively argues that the evidence did not justify giving the instruction in the first place. A defendant is entitled to a coercion instruction only if he establishes an evidentiary foundation for the defense: (1) a fear of immediate death or serious bodily harm unless he committed the offense; and (2) no reasonable opportunity to refuse to commit the offense and avoid the injury threatened. *United States v. Sawyer*, 558 F.3d 705, 711 (7th Cir. 2009). Robinson did not establish a foundation for either element. His coercion theory of defense was premised entirely on his testimony that he feared Weyforth would "put a slab on" him by planting drugs and then arresting him. This is hardly a present, immediate, or impending threat of injury or death, and Robinson had a reasonable opportunity to refuse to commit the crimes at any time during the six-week duration of his contact with Weyforth. *See id.* at 712 (defendant failed to establish a foundation for a coercion-defense instruction where she "did not present evidence that she never had the chance to contact the

police in order to report [the] threats"). Accordingly, even if the district court failed to give the jury a written copy of the coercion instruction, the omission cannot have affected Robinson's substantial rights.

## B. Federal-Funds Bribery

Robinson was convicted of bribery concerning a program receiving federal funds, a violation of 18 U.S.C. § 666, which provides, in relevant part:

> (a) Whoever, if the circumstance described in subsection (b) of this section exists—
>
> . . . .
>
> > (2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;
>
> shall be fined under this title, imprisoned not more than 10 years, or both.
>
> (b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

Robinson challenges his conviction on two grounds. First, he claims that the evidence was insufficient evidence to establish the "federal funds" element under subsection (b), which requires the government to prove that the "organization, government, or agency" whose agent was bribed received federal assistance in excess of $10,000 during the year in which the bribe was offered. Second, he challenges the sufficiency of the evidence on the "transactional element" in subsection (a)(2)— the statutory requirement that the bribe must be made with intent to influence the agent "in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more." In a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and reverse only if no rational juror could have found the elements of the offense beyond a reasonable doubt. *United States v. Smith*, 576 F.3d 681, 686 (7th Cir. 2009).

### 1.  Federal-Funds Element

Congress enacted § 666 under its Spending Power, U.S. CONST. art. I, § 8, cl. 1, and the Necessary and Proper Clause, *id.* art. I, § 8, cl. 18; the federal-funds element supplies the federal interest necessary to support congressional authority to enact the statute. *See Sabri v. United States*, 541 U.S. 600, 605 (2004). This element requires the government to prove that the bribe was solicited or offered with intent to influence an agent of a state, local, or tribal "organization, government, or agency" that

received more than $10,000 in federal aid in the year in which the bribe was offered. 18 U.S.C. § 666(b). Robinson claims that the evidence was insufficient to establish that the Chicago Police Department received more than $10,000 in federal funds between June 1, 2005, and May 31, 2006, as required by § 666(b).

The government relied on testimony from Larry Sachs, the Director of Grants for the Chicago Police Department. Sachs testified that on August 19, 2005, the City of Chicago and neighboring municipalities received a law-enforcement grant from the U.S. Department of Justice ("DOJ") in the amount of $6.2 million. He explained that Chicago was the lead applicant on the grant, which was "supposed to be used by the Chicago Police Department." Although some of the money went to the other municipalities, the City of Chicago received $4.2 million of the total. This testimony was easily sufficient to prove that the Chicago Police Department received $4.2 million in federal funds during the year in question.[2]

---

[2] The parties assume (and the jury was instructed) that the "organization, government, or agency" in question is the Chicago Police Department. The Police Department qualifies as an "agency" of city government under the statute's definitions. *See* 18 U.S.C. § 666(d)(2) (including within the definition of "government agency" a "department" of the government). In *United States v. Grossi*, 143 F.3d 348, 350 (7th Cir. 1998), we held that it did not matter whether a township's general-assistance program, which was targeted by the bribe in question, had itself received more than $10,000 in federal funds.

(continued...)

If more were needed, the jury also had evidence regarding how the grant money was used. The government introduced a DOJ document explaining that the grant money would be used for, among other things, the "purchase [of] marked cars, canine vehicles and other vehicles," and to fund an outreach program of the Chicago Police Department. The jury reasonably could have inferred that these items totaled more than $10,000.

## 2. Transactional Element

As relevant here, § 666 prohibits offering or giving "anything of value" to a person with intent to "influence or reward" an agent of a federally funded organization, government, or agency "in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of

---

[2] (...continued)

What was important in *Grossi* was that the township—"a 'government' subject to the statute"—received the minimum statutory amount. *Id.* ("[M]oney is fungible and its effect transcends program boundaries."). Here, there is no question that the City of Chicago received in excess of $10,000 in federal funding during the relevant period. As we have explained, Chicago and neighboring municipalities received a $6.2 million law-enforcement grant from the U.S. Department of Justice; Chicago directed its $4 million share to the Police Department. So whether the City of Chicago *or* its Police Department is the relevant "government" or "agency," the threshold was met.

value of $5,000 or more." 18 U.S.C. § 666(a)(2). This sub-section captures bribe-givers. Another subsection of § 666 contains the parallel offense of *soliciting* or *accepting* a bribe; § 666(a)(1)(B) prohibits agents of federally funded entities from soliciting or accepting "anything of value . . . intending to be influenced . . . in connection with any business, transaction, or series of transactions . . . involving anything of value of $5,000 or more." *Id.* § 666 (a)(1)(B). Together, these two subsections cover anyone who gives *or* takes a bribe with the prohibited intent—that is, with the intent to influence an agent of a federally funded organization in connection with the organization's "business, transaction, or series of transactions." But there is a qualifier: The "business" or "transaction" sought to be influenced must have a value of $5,000 or more. In other words, the *subject matter* of the bribe must be valued at $5,000 or more; the bribe itself need only be "anything of value."[3] *See United States v. Duvall*, 846 F.2d 966, 976 (5th Cir. 1988) ("[I]t is clear that the $5000 figure qualifies the transactions or series of transactions that

---

[3] There is a passage in *United States v. Spano*, 401 F.3d 837, 839 (7th Cir. 2005), erroneously suggesting that the § 666 offense requires the government to prove that an agent of a federally funded entity "was offered or accepted a bribe worth $5000 or more." This mistake is understandable; the statute uses the phrase "anything of value" to describe both the bribe *and* its subject matter. As we have explained, however, only the transactional element of the offense carries the $5,000-minimum-value qualifier; the bribe itself can be "anything of value."

the recipient of the bribe carries out in exchange for receiving 'anything of value.' The wording of the section does not place a value on the bribe . . . .").

As applied here, the government had to prove that Robinson offered the bribe "with intent to influence or reward" Weyforth "in connection with any business, transaction, or series of transactions" of the Chicago Police Department "involving anything of value of $5,000 or more." The government's theory was that Robinson paid Weyforth with intent to induce him to divert police attention away from his drug-trafficking operation at the Washington Park Homes. This Police Department "business," the government argued, was worth more than $5,000 based on (1) the officers' salaries; (2) the ongoing value of the bribe; or (3) the profit Robinson stood to gain if the police looked the other way.

On the first measure of value, the government called a Chicago Police Department payroll specialist who testified that the wages paid to the officers involved in the Robinson investigation exceeded the $5,000 threshold. Alternatively, the prosecutor argued to the jury that Robinson was willing to pay as much as $1,000 a week on an ongoing basis in order to "get the heat off" his drug-selling operation. Although he ended up paying only about $1,000, the offer itself was for more than $5,000 and that was enough to satisfy the statutory requirement. Finally, the government argued that the profit Robinson could have realized from uninterrupted cocaine sales was more than $5,000.

Robinson did not object to the introduction of any of this evidence. In his motion for judgment of acquittal,

however, he *did* challenge the sufficiency of the evidence on the transactional element. The district court denied the motion, relying on the salary evidence and the profit Robinson could have expected from the May 3 transaction as sufficient to establish the $5,000-minimum requirement for the transactional element of the offense.

On appeal Robinson initially focused his argument on the evidence of the officers' salaries, claiming that under § 666(c) evidence of bona fide salaries or wages is inadmissible to meet the $5,000 threshold. Subsection 666(c) provides: "This section does not apply to bona fide salary, wages, fees, or other compensation paid . . . in the usual course of business." We disagree that this provision precludes the government's use of salary evidence to establish the transactional element of the offense. Subsection 666(c) creates an exception to the federal-funds bribery statute for "bona fide" salary and other compensation paid "in the usual course of business." The phrase "[t]his section does not apply" suggests only that legitimate salary, wages, and other compensation may not be considered a bribe, *not* that salary evidence may not be admitted to prove the value of the "business" or "transaction" the bribe-giver or bribe-taker intended to influence.

Other circuits are divided on whether the § 666(c) exception applies to the bribe alone—the "anything of value" that is corruptly solicited or offered—or both the bribe *and* the transactional element of the § 666 offense. *Compare United States v. Mills*, 140 F.3d 630, 633 (6th Cir. 1998) (holding that the § 666(c) exception applies to both elements of the offense), *with United States v. Marmolejo*, 89

F.3d 1185, 1190 n.5 (5th Cir. 1996) (noting that the § 666(c) exception for salaries, wages, and compensation "refers to the alleged wrongdoing," i.e., the bribe, and collecting cases on this point). The Sixth Circuit's reading of § 666(c) in *Mills* is hard to square with the statutory text, which uses the language of an exception, not the language of a limitation on the proofs.

The natural reading of the exception is that § 666 does not target bona fide salary, wages, and compensation; that is, compensation paid in the ordinary course shall not be construed as a bribe. There is nothing in the text of § 666(c) to suggest that it applies more broadly to the other elements of the offense. More to the point here, there is nothing in § 666(c) to suggest that bona fide salary and other compensation is inadmissible to prove the value of the "business" or "transaction" that the bribe-giver or bribe-taker sought to influence. We agree with the Fifth Circuit that the exception contained in § 666(c) pertains to the alleged wrongdoing—that is, the bribe itself—and does not limit the modes of proof for the $5,000 minimum-value requirement in the transactional element of the offense. *See Marmolejo*, 89 F.3d at 1190 n.5.

The government's method of proving this element, however, raises a more fundamental question—one that we raised at oral argument and asked the parties to analyze in supplemental briefs. The Supreme Court held in *Salinas v. United States*, 522 U.S. 52, 61 (1997), that the § 666 bribery offense does not require the government to prove that "the bribe in question had any particular influence on federal funds." That is, there need not be a

factual link between the federal funds and the bribe. Later, in *Sabri*, the Court held that the absence of a "nexus" requirement did not mean that Congress exceeded its power under the Spending and Necessary and Proper Clauses when it enacted the statute. 541 U.S. at 605-06. Because money is fungible, Congress could punish acts of bribery aimed at corrupting agents of federally funded entities without requiring any connection between the bribe and the federal money. *Id. Sabri* held that Congress has the authority under the Necessary and Proper Clause "to see to it that taxpayer dollars appropriated under th[e] [Spending] power are in fact spent for the general welfare, and not frittered away in graft or on projects undermined when funds are siphoned off or corrupt public officials are derelict about demanding value for dollars." *Id.* at 605.

*Salinas* was before the Court on certiorari from the Fifth Circuit's decision in *Marmolejo*, and one of the questions the court of appeals decided in that case was whether the transactional element of § 666(a) encompasses transactions in intangible benefits. *Salinas/ Marmolejo* involved an inmate at a county jail who bribed the sheriff and a deputy sheriff to allow conjugal visits with his wife and girlfriend. The jail received federal funds to help defray the costs of housing federal prisoners. Although the defendant was a prisoner housed in the jail under the agreement between the federal government and the county, there was no obvious link between the federal funds and the subject matter of the bribery scheme. The Fifth Circuit held that the statute did not require proof that the federal funds had

any connection with the bribe and also that the transactional element of the § 666(a) offense "cover[s] transactions involving intangibles, such as conjugal visits, that are difficult to value." *Marmolejo*, 89 F.3d at 1191-93. The Supreme Court affirmed on the first question, *Salinas*, 522 U.S. at 57-60, but specifically reserved judgment on the second, *id.* at 61 ("[W]e do not address [§ 666(a)'s] applicability to intangible benefits such as contact visits, because that question is not fairly included within the questions on which we granted certiorari.").

Here, as in *Marmolejo*, Robinson's bribe was not intended to influence any specific transaction or series of transactions of the Chicago Police Department; it was intended more generally to induce Weyworth to divert police attention away from Robinson's cocaine-trafficking operation in the Washington Park Homes. This raises the question decided by the Fifth Circuit in *Marmolejo* but reserved by the Supreme Court in *Salinas*: Does § 666(a) apply to bribes intended to influence the intangible transactions or business of federally funded organizations?

The broad language of the statute suggests that the answer is "yes." The statute targets bribes solicited or offered "with intent to influence or reward" an agent of a federally funded organization "in connection with *any* business, transaction, or series of transactions . . . involving *anything* of value of $5,000 or more." 18 U.S.C. § 666(a)(2) (emphasis added). "Any" and "anything" are terms of expansion. Although "transaction" usually connotes a discrete act or event involving reciprocal

exchange, the term "business" has a broader meaning, at least in the context in which it is used here.[4]

Robinson suggests that the term "business" in § 666(a)(2) should be understood in its commercial sense. We disagree. The "business" of a federally funded "organization, government, or agency" is not commonly "business" in the commercial sense of the word. An interpretation that narrowly limits the scope of the transactional element to business or transactions that are commercial in nature would have the effect of excluding bribes paid to influence agents of state and local governments. This contradicts the express statutory text.

Based on the breadth of the statutory language, and the absence of any language specifically "restricting [the statute] to transactions involving money, goods, or services," the Fifth Circuit concluded in *Marmolejo* that § 666(a) covers bribes intended to influence business or transactions in intangibles. 89 F.3d at 1191-92. The Eleventh Circuit has agreed. *See United States v. Townsend*,

---

[4] The words "transaction" and "business" have broader and narrower meanings. "Transaction" means "an instance of buying or selling something; a business deal . . . ; the action of conducting business;" but also "an exchange or interaction between people." NEW OXFORD AMERICAN DICTIONARY 1838 (3d ed. 2010). "Business" runs the gamut from "a person's regular occupation, profession, or trade . . . ;" to "an activity that someone is engaged in . . . ; a person's concern . . . ; work that has to be done or matters that have to be attended to . . . ;" to "the practice of making one's living by engaging in commerce. " *Id.* at 237.

630 F.3d 1003, 1010-11 (11th Cir. 2011). *Townsend* involved bribes paid to a corrections officer in exchange for relaxing a jail inmate's conditions of pretrial detention. Focusing on the statute's use of the broad phrase "anything of value," the Eleventh Circuit held that "intangibles, such as freedom from jail and greater freedom while on pretrial release, are things of value under § 666(a)(1)(B)." *Id.* at 1011.

Other circuits, while not addressing the question quite so directly, are in accord. *See, e.g., United States v. Hines*, 541 F.3d 833, 836-37 (8th Cir. 2008) (bribes paid to deputy sheriff for his help in expediting eviction proceedings are covered by § 666(a)); *United States v. Zimmermann*, 509 F.3d 920, 926-27 (8th Cir. 2007) (bribes paid to city councilman for his help in securing favorable treatment on zoning matters are covered by § 666(a)); *United States v. DeLaurentis*, 230 F.3d 659, 662 (3d Cir. 2000) (bribes paid to police detective for his intercession with the town council for favorable treatment on renewal of liquor license are covered by § 666(a)); *United States v. Santopietro*, 166 F.3d 88, 93 (2d Cir. 1999) (bribes paid to influence municipal officials in exchange for favorable treatment in various zoning and subdivision matters are covered by § 666(a)). Similarly, in this circuit we have affirmed a § 666(a) conviction of a deputy prosecutor who took bribes in exchange for falsely expunging drunk-driving convictions. *United States v. Fernandes*, 272 F.3d 938, 944 (7th Cir. 2001).

We acknowledge the cautionary effect of the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896,

2931 (2010), which limited the reach of the honest-services fraud statute, 18 U.S.C. § 1346, to bribes and kickbacks in schemes aimed at corrupting the intangible right of honest services. We acknowledge as well that the broad language in § 666(a) leaves the boundaries of the offense somewhat ambiguous. But no more so than the circumscribed version of the honest-services fraud offense after *Skilling*. We need not determine the outer limits of the § 666(a) offense to decide this case. We agree with our sister circuits that the language of the business or transaction clause in § 666(a) is broad enough to include bribes offered to influence the intangible business or transactions of a federally funded organization, such as the law-enforcement "business" of a police department that receives federal funds.

This understanding of the transactional element is consistent with the Supreme Court's discussion of § 666(a) in *Sabri*. There, the Court emphasized the statute's focus on protecting the integrity of federal programmatic funds: "Section 666(a)(2) addresses the problem at the sources of bribes, by rational means, to safeguard the integrity of the state, local, and tribal recipients of federal dollars." 541 U.S. at 605. Bribes paid to influence the intangible, noncommercial business of a federally funded organization threaten to undermine the integrity of those organizations no less than bribes paid to influence a discrete commercial-like transaction.

The Court's decision in *Salinas* also counsels against a too-narrow construction of the statute. In holding that the transactional element "is not confined to a business or transaction which affects federal funds," the Court noted

that "[t]he word 'any,' which prefaces the business or transaction clause, undercuts the attempt to impose [a] narrowing construction." *Salinas,* 522 U.S. at 57.

In this case, Robinson paid Weyforth to divert police attention from his drug-trafficking operation at the Washington Park Homes. Although law-enforcement services are intangible and difficult to quantify, the language of § 666(a) is broad enough to cover bribes paid to a police officer to induce him to refrain from enforcing the law.

This brings us back to the evidentiary question: When the bribe is aimed at the intangible business or transactions of a federally funded entity, what kind of evidence will suffice to prove that the business or transaction at issue was worth at least $5,000? Some cases have approved using the amount of the bribe as a proxy for the value of its intangible subject matter on the theory that the benefit is worth at least what the bribe-giver was willing to pay for it. *See Townsend,* 630 F.3d at 1012 ("[T]he value of an intangible in the black market of corruption is set at the monetary value of what a willing bribe-giver gives . . . in exchange for the intangible."); *Zimmermann,* 509 F.3d at 926 (finding that the value of the bribe satisfied the $5,000 requirement, and the government need not prove that the zoning matter at issue had a $5,000 value to the city); *Fernandes,* 272 F.3d at 944 (accepting the amount paid in bribes for the expungement of drunk-driving convictions as proof "that the 'thing of value' in this bribery scheme exceeded $5,000"); *United States v. Zwick,* 199 F.3d 672, 689-90 (3d Cir. 1999) (finding that "the statute does not require

that value be measured from the perspective of the organization, government, or agency"; what the bribe-giver agreed to pay satisfies the $5,000 requirement), *abrogated on other grounds by Sabri*; *Santopietro*, 166 F.3d at 93 (same); *Marmolejo*, 89 F.3d at 1193-95 (same).

Without excluding other possible methods of valuation, we agree that the amount of the bribe may suffice as a proxy for value; at least it provides a floor for the valuation question. Here, the government relied only in part on this evidence of value. Robinson made an open-ended offer to pay Weyforth $1,000 a week to divert police attention from his drug-trafficking activities. The government argued that Robinson's willingness to pay $1,000 a week on an ongoing basis was evidence that the subject matter of the bribe was worth at least $5,000. As the government seemed to recognize, however, this argument was weakened by the fact that Robinson paid far less than that amount. Perhaps this accounts for the government's primary focus on evidence of the officers' salaries and also the profit Robinson stood to realize from unfettered cocaine trafficking, using the controlled transaction as a measure. We see nothing objectionable in these alternative methods of proof; both easily exceeded the $5,000 threshold. Accordingly, we conclude that the evidence was sufficient to permit a rational juror to find that the government carried its burden of proof on the transactional element of the § 666(a) offense.

AFFIRMED.