In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1918

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DOMINICK OWENS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cr-00775-1—**Blanche M. Manning,** *Judge.*

ARGUED SEPTEMBER 11, 2012—DECIDED OCTOBER 11, 2012

Before BAUER, POSNER, and WOOD, *Circuit Judges.*

BAUER, *Circuit Judge.* A jury convicted Dominick Owens, a City of Chicago zoning inspector, of two counts of federal program bribery, 18 U.S.C. § 666(a)(1)(B), for accepting two $600 bribes in exchange for issuing certificates of occupancy for four newly constructed homes. On appeal, Owens challenges the sufficiency of the evidence regarding whether the issuance of the certificates of occupancy had a value of $5,000 or more as required by

§ 666(a)(1)(B). Because we find there was insufficient evidence from which a jury could find guilt beyond a reasonable doubt on this element, we reverse.

## I. BACKGROUND

Dominick Owens was a zoning inspector for the City of Chicago's Zoning Department. The Zoning Department was responsible for enforcing the City's zoning ordinance, reviewing and approving architectural plans for the construction of new single-family homes, and inspecting newly constructed homes. After an inspection, if a newly constructed home complied with the zoning ordinance and a zoning inspector was satisfied that it was "safe to occupy," the Zoning Department issued a certificate of occupancy certifying that the home was "ready to be lived in and used." Under the zoning ordinance, a building may not be occupied unless a certificate of occupancy has been issued.

Christoir McPhillip, the government cooperator in this case, was an acquaintance of Owens and an "expediter"—someone who performs the "legwork" of the zoning process on behalf of developers, contractors, and members of the public by making appointments, completing paperwork, and attending meetings with Zoning Department employees. Prior to the bribes at issue in this case, McPhillip had paid Owens bribes for the expedited issuance of certificates of occupancy on at least eight occasions.

In the summer of 2006, McPhillip became a confidential informant for the FBI and recorded phone calls and two

meetings with Owens that led to the charges in this case. On July 10, 2006, McPhillip called Owens and said that he needed certificates of occupancy for two single-family homes. After learning the addresses of the two homes, Owens created computer records indicating that both homes had passed inspection; neither home, however, was ever inspected. The next day, after several recorded phone calls, McPhillip and Owens met on the side of a road, and McPhillip paid Owens $600 in cash. Owens acknowledged after his arrest that he accepted the money on July 11 "in exchange for issuing quick certificates of occupancy" and "expediting the process for [McPhillip]."

Just over a week later, the same scenario played out again. On July 19, 2006, McPhillip called Owens regarding two different single-family residences and once again said he needed expedited certificates of occupancy. Owens and McPhillip met in Owens' driveway the following day, and Owens again accepted $600 in cash from McPhillip; Owens admitted receiving this money from McPhillip after his arrest. No Zoning Department records indicate that Owens ever inspected either of the homes.

After Owens issued the certificates of occupancy for the four homes, McPhillip and the FBI each retained copies of the originals. The Zoning Department also kept copies of the certificates of occupancy and maintained computer records documenting the issuance of the certificates because it often receives requests for copies from homeowners, banks, and contractors. The applications

for the certificates of occupancy for the four homes indicate that the estimated value of the construction work performed on each of the homes ranged from $180,000 to $250,000. In July 2006, mortgages were obtained on each of the four homes, with notes ranging from $200,000 to over $600,000 per home.

On September 21, 2009, Owens was arrested. He waived indictment and was charged by information on December 30, 2009, with two counts of federal program bribery in violation of 18 U.S.C. § 666(a)(1)(B). The first count charges Owens with accepting the July 11 bribe for the issuance of two certificates of occupancy; the second count charges him with accepting the July 20 bribe for the second pair of certificates. The jury convicted Owens on both counts, and the district court sentenced Owens to a term of imprisonment of twelve months and one day.

## II. DISCUSSION

On appeal, Owens argues that there was insufficient evidence to support the jury's verdict. In considering a challenge to the sufficiency of the evidence to sustain a conviction, we may reverse the conviction only if no rational trier of fact, viewing the evidence in the light most favorable to the Government, could have found the defendant's guilt beyond a reasonable doubt. *United States v. Gorman,* 613 F.3d 711, 715 (7th Cir. 2010).

The federal program bribery statute, as relevant here, prohibits agents of federally funded entities from

soliciting or accepting "anything of value . . . intending to be influenced . . . in connection with any business, transaction, or series of transactions . . . involving any thing of value of $5,000 or more[.]" 18 U.S.C. § 666(a)(1)(B). Owens concedes that the Government proved all but one element of § 666(a)(1)(B); his sole challenge is to the sufficiency of the evidence regarding the requirement that the "business" or "transaction" sought to be influenced involved a "thing of value of $5,000 or more[.]" In *United States v. Robinson*, 663 F.3d 265 (7th Cir. 2011), we said that this element of § 666(a) means that "the *subject matter* of the bribe must be valued at $5,000 or more; the bribe itself need only be 'anything of value.'" *Id.* at 271 (citing *United States v. Duvall*, 846 F.2d 966, 976 (5th Cir. 1988)). Owens contends that there was insufficient evidence that the value of the subject matter of the bribes in this case—identified in the information as the issuance of the four certificates of occupancy—met the $5,000 threshold and that the evidence instead suggested that the certificates were invalid and worthless.[1]

The Government admits that the issuance of the certificates of occupancy in this case "does not have an easily-quantified exact dollar value." Section 666(a) is ambiguous on the question of how to measure value, and we and other circuits have adopted a variety of

---

[1] Because we find that the Government's evidence was insufficient to meet its burden, we need not reach Owens' arguments regarding the evidence he elicited at trial that he contends established that the certificates of occupancy had little or no value.

approaches to determine the value of the subject matter of a bribe when it is an intangible benefit or its value is difficult to quantify. The easiest and most obvious way is by looking at how much someone in the market was willing to pay for the benefit and an official was willing to take to provide the benefit—the value of the bribe. This means that the bribe amount "may suffice as a proxy for value; at least it provides a floor for the valuation question." *Robinson*, 663 F.3d at 275; *see also United States v. Townsend*, 630 F.3d 1003, 1012 (11th Cir. 2011) ("[T]he value of an intangible in the black market of corruption is set at the monetary value of what a willing bribe-giver gives and what a willing bribe-taker takes in exchange for the intangible."); *United States v. Marmolejo*, 89 F.3d 1185, 1194 (5th Cir. 1996) (arriving at an estimate of the value of conjugal visits obtained through the bribery of prison officials "in the same way an appraiser would value an asset—by looking at how much a person in the market would be willing to pay for them") (citation omitted). This method of valuation does not help the Government meet its burden in this case; Owens' acceptance of two $600 bribes in exchange for the issuance of the certificates falls far short of the $5,000 threshold.

Another approach to valuing the subject matter of the bribe is by looking to the value of the benefit the bribe-giver will receive if the bribe is successful. In *United States v. Curescu*, 674 F.3d 735 (7th Cir. 2012), for example, a developer had used an unlicensed plumber to add plumbing to four newly constructed residential units. A plumbing inspector discovered the violation

and told the developer that he had to redo the plumbing using a licensed plumber. *Id.* at 738. Rather than removing the old plumbing and replacing it using a licensed plumber, a different plumbing inspector was bribed to certify falsely that a licensed plumber had completed the plumbing in the four units, which allowed the illegal plumbing to remain. *Id.* Thus, the value of the false certification was the money the developer did not have to spend redoing the plumbing, an amount that exceeded $5,000. *Id.* at 743; *see also Robinson*, 663 F.3d at 267, 276 (approving of the use of the "estimated value of an illicit 'license' to sell cocaine" as a measure of value in a case in which a cocaine-trafficker attempted to bribe a police officer to "get the heat off" his drug-selling operation). This method of valuation is not limited to the bribe-giver; courts may also consider the value of the benefit to related parties "with an immediate interest in the transaction." *See United States v. Hines*, 541 F.3d 833, 837 (8th Cir. 2008).

Recognizing that the bribe amount in this case would not take it over the statutory threshold, the Government relied on the benefit-of-the-bribe approach at trial. In doing so, the Government offered evidence it believed established the value of the certificates of occupancy from the perspectives of the developers and homeowners of the four homes for which Owens issued the certificates. The Government presented mortgage documents showing that the homeowners received mortgages with notes ranging from $200,000 to over $600,000 to purchase the four homes, and zoning documents indicating that the construction costs for each home

were estimated to be between $180,000 and $250,000. According to the Government, the mortgage values and construction costs for the homes, "coupled with the fact that homes could not be occupied without certificates," permits "the reasonable inference that the certificates involved something valued at $5,000 or more." We disagree.

To understand why the Government's evidence failed, we must look more closely at the "subject matter" of the bribes at issue in this case. The information identifies "the issuance of the certificates of occupancy" for the four properties as the "thing of value of $5,000 or more," and that is what the Government argued at trial and maintains on appeal. It cannot be that simple, though, as anyone who complies with the Board of Zoning procedures and has a home that passes inspection can receive a certificate of occupancy for free. Obtaining the issuance of the certificates through greasing a palm rather than through legitimate means must therefore create value in some other way. Perhaps, as the Government suggests, it is obtaining a certificate without an inspection. This could be valuable in at least two ways. First and most obviously, if the home's construction was defective and the home would not pass inspection, paying a bribe and avoiding an inspection would save the cost of performing repairs. Alternatively, a home could be free of zoning violations, but a developer or homeowner places a premium on expediting the issuance of a certificate due to a pressing need to sell or occupy the home or obtain a mortgage with favorable and time-sensitive terms. The problem for the Government, though,

is that it failed to present any evidence of either of these situations in this case, or of any situation in which the issuance of the certificates as a result of the bribes benefitted the developers or homeowners in some way that the issuance of the certificates through legitimate means would not have. *Cf. Curescu*, 674 F.3d at 741; *Hines*, 541 F.3d at 837 (finding evidence sufficient to sustain conviction under § 666(a)(1)(B) where an execution deputy in the sheriff's office was paid bribes "to effectuate [his] timely performance of [his] official duties involving court orders of eviction" where property owners, landlords, and lawyers testified that "a landlord or property owner loses a substantial amount in market value, rent and mortgage payments, and/or property damage every day a defaulting tenant or mortgagee is in possession of the property"); *United States v. Zwick*, 199 F.3d 672, 690-91 (3d Cir. 1999) (noting that the $5,000 threshold was met because, *inter alia*, the bribe-givers "would have lost $10,000 had they not received [the permits for which they paid the bribe] in a timely manner"), *abrogated on other grounds by Sabri v. United States*, 541 U.S. 600, 124 S.Ct. 1941, 158 L.Ed.2d 891 (2004).

Perhaps recognizing the problem it has in relying on the value of the issuance of the certificates alone to meet its burden, the Government selectively cites language from § 666(a)(1)(B) and contends that it did not need to prove that the issuance of the certificates was worth more than $5,000, "but only that the issuance of the certificates *involved* anything valued at $5,000 or more." Thus, the Government argues, because the issuance of the certificates "involved something" worth

more than $5,000—the mortgages on the homes and the construction costs—it met the statutory threshold. We reject this overly expansive interpretation of § 666(a)(1)(B). Such a broad reading of "involving" would render the $5,000 threshold meaningless, and we have clearly said that § 666(a) requires that "the *subject matter* of the bribe"—not something to which the subject matter of the bribe is tangentially related—"must be valued at $5,000 or more." *See Robinson*, 663 F.3d at 271. Because the Government failed to put forth any evidence linking the mortgages and the construction costs to the value of the issuance of the certificates, it failed to prove that the subject matter of the bribes in question here met the statutory threshold.[2]

---

[2] The Government also argued at trial that the issuance of the certificates of occupancy "involved" the "corruption of [Owens'] core functions" as a zoning inspector, and therefore that the jury should consider his salary of over $70,000 a year in valuing the issuance of the certificates. The Government wisely chose not to focus on this argument on appeal. Although we gave cursory approval to the use of evidence of police officers' salaries (in addition to other evidence of value) in *Robinson*, 663 F.3d at 275-76, here the Government admits Owens' salary is "a step removed from the individual trans-action" underlying the bribes. We accordingly reject this argument because permitting the salary evidence to push the bribes in question over the $5,000 threshold without a clearer relationship to the subject matter of the bribe would read the requirement out of the statute whenever an official charged under § 666(a)(1)(B) earned a salary greater than $5,000.

### III. CONCLUSION

For the foregoing reasons, we REVERSE the judgment of the district court.