In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-2576

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GARJON COLLINS,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 2:09-cr-00186—**Joseph S. Van Bokkelen,** *Judge.*

ARGUED JANUARY 12, 2011—DECIDED APRIL 22, 2011

Before KANNE and TINDER, *Circuit Judges*, and HERNDON, *District Judge.**

HERNDON, *District Judge*. The defendant, Garjon Collins, seeks review by this Court of his sentence, asserting that the district judge's sentence of 108 months of incarceration was unreasonable. The defendant seeks a reduction in sentence of 24 months. We affirm.

---

* The Honorable David R. Herndon, Chief Judge, United States District Court for the Southern District of Illinois, sitting by designation.

## I. BACKGROUND

The defendant was indicted on 11 counts of misusing a Social Security number under 42 U.S.C. § 408(a)(7)(B) and 11 counts of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The defendant entered a plea of guilty to all 22 counts and, after a lengthy sentencing hearing which included additional testimony and evidence from the government, the district judge sentenced the defendant to 108 months, composed of 60 months on each of Counts 1-11 to run concurrently with each other; 24 months on Count 12 to run consecutively to Counts 1-11; 24 months on Count 13, to run consecutively to Count 12; and 24 months on each of Counts 14-22, to run concurrently with each other and with Count 13.

The defendant has exhibited a lengthy, well-seasoned history of identity theft. His first sentence for this offense occurred in 2003 in Cook County, Illinois, where he received a state sentence of 18 months probation for possession or display of altered identification documents. He used those documents, in 2003, to purchase five firearms in Indiana. For that offense he was charged and convicted in federal court with being a felon in possession of a firearm, and was sentenced to 37 months imprisonment. Soon after his release from federal prison in 2007, the defendant went on an identity theft spree, obtaining the names, addresses, social security numbers and birth dates from Illinois residents, mostly from the North Shore area of Chicago. These individuals had, in general, salaries in excess of $250,000. He used these identities to create false birth certificates, pay records, and

other documents which he then took to the Bureau of Motor Vehicles offices in northern Indiana to obtain multiple Indiana state identification cards, none of which were in his real name. With these Indiana identities, the defendant, or one of his co-conspirators, would purchase large-ticket items, and take those items back into Illinois for resale.[1]

The evidence presented at the sentencing hearing was that between 2002-2004 the defendant stole at least seven additional identities. Two victims of those offenses testified at his sentencing hearing. These victims (identified as "D.D." and "D.C.") testified as to the impact of the identity theft on their lives, which was significant. D.C. testified that he has spent countless hours over the past five years dealing with the aftermath of the defendant's use of his identity (including having had a warrant issued for his arrest in Indiana for writing bad checks).

D.D., an established businessman, testified that he worked in the financial industry for twenty years, and had a limited liability company which designed medical

---

[1] At the time of the execution of the search warrant on the defendant's mother's home, items seized from his bedroom included: 8 Indiana State ID cards with the defendant's photograph (or that of his co-conspirators) bearing names of identity theft victims; 2 Michigan operator's licenses with his photograph and false names and addresses; credit cards in the names of other persons; checks in the names of others; a "Profile" ledger with names, addresses, birth dates, Social Security numbers, mortgage and vehicle information for individuals other than the victims in this case; original birth certificates, and many more items associated with identity theft. (Govt. Ex. 11).

field software. After his identity was stolen by the defendant, and over $12,000 was charged to accounts in his name, D.D.'s credit rating dropped, he was denied credit, his company failed and he lost his investment.

Three victims from the instant case (identified as "D.W.C.," "P.R." and "J.M.") testified at the sentencing hearing as well. D.W.C. testified that his stolen identity resulted in harassing calls from a collection agency, and approximately $4,500.00 in unauthorized charges against his account. He testified to the mental anguish and hours he spent trying to resolve the issues resulting from the theft of his identity. P.R. testified that her credit score had been adversely affected as a result of the theft of her identity by the defendant, that she lost her sense of privacy, the ability to secure a home equity loan for a period of time, the loss of her good name and morale. J.M. testified that the identity theft he experienced as a result of the defendant's actions caused him to lose time at work, and his feeling of violation.

Both the government and the defendant objected to the Presentence Investigation Report ("PSR") and submitted sentencing memoranda to the district court. The defendant asserted that there were only eleven victims, not thirty, and that his criminal history had been incorrectly determined. The government asserted that the amount of loss was in excess of $200,000, not $46,203.92, as determined by the PSR. The district judge heard oral argument on the objections, took the matter under advisement, and ruled at a later sentencing hearing. Neither party objected to the factual description of the offense.

The district court determined that the total number of victims was twenty-three (23)[2], and also determined that the defendant's final criminal history calculation would not include an offense which took place in 1989, because that offense occurred more than fifteen years before the date of the offenses to which the defendant had plead guilty.

The district court further determined that the defendant's total criminal history category was a IV, after subtracting three points. Finally, the district court determined that the amount of loss was $171,049.00, declining to adopt the government's argument that the crimes committed between 2002-2004 were to be included in the loss calculation. The district judge determined that the total offense level was a twenty-two (22), finding that the offenses had a base offense level of six (6) which was increased ten (10) levels pursuant to U.S.S.G. § 2B1.1(b)(1)(F) because the loss involved more than $120,000.00. The district court added two (2) levels to the sentence based on U.S.S.G. § 2B1.1(b)(2)(A)(i) because the defendant's offense involved more than ten (10) victims. Two (2) levels were added because the defendant's offense included stolen property and because the defendant was involved in receiving and selling stolen property. U.S.S.G. § 2B1.1(b)(4). Finally, the

---

[2] The victim number calculation was based on the eleven victims from the indictment plus twelve additional victims who came from the defendant's accomplices' actions which were related to the charges in the indictment to which the defendant pleaded guilty.

district court added four (4) levels pursuant to U.S.S.G. § 3B1.1(a) upon the district court's finding that the defendant was an organizer or leader of five (5) or more individuals in the commission of the offenses. The adjusted offense level was a twenty-four (24), however the defendant received a reduction of two (2) levels for his acceptance of responsibility, resulting in a final offense level of twenty-two (22).

The district judge then recited the factors of 18 U.S.C. § 3553(a) acknowledging his obligation under the law as he began his analysis. To frame just how scheming the defendant had been in his criminal activity and how serious the crimes were that he committed, the district judge began by reading a letter the defendant had written to the judge in the days leading up to the hearing. In the letter, the defendant sounded a sincere note as he spoke of his remorse at having adversely affected so many people—victims and family alike. He wanted to apologize to all and assure the district court he was and would be a changed man. The defendant requested of the district judge, "that you consider leniency in sentencing me." The defendant failed to consider that a sentencing judge is not likely to leave relevant matters of the past in the past. From defendant's last federal sentencing, Judge Van Bokkelen retrieved a letter which the defendant had written to Judge Lozano before being sentenced. The 2005 letter was nearly identical in tone and word regarding the defendant's attestations of remorse, promises of change, and his plans for rehabilitation. Not restricting himself to the defendant's prior written word, Judge Van Bokkelen

read the defendant's words from the prior sentencing transcript: "I'm not going to do any more crimes, period. I am not going to do any more criminal activity, period. That is out of my life permanently."

The district judge analyzed, in depth for purposes of sentencing, a significant portion of the evidence which supported the government's prosecution of the case. It was clear from the evidence seized from the defendant's house that a great deal of criminal activity having to do with identity theft was ongoing. Obviously, the defendant's criminal enterprise would have continued for the foreseeable future but for his arrest. The district court noted that the defendant's crime included his involvement of others and opined that had the defendant not been arrested, he would likely have continued to steal others' identities. The district court considered the impact of the defendant's actions on the lives of others and the long-range impact of his crimes on his victims. The district court determined that a total of 108 months of imprisonment was necessary to protect society from further crimes by the defendant, reflected the seriousness of his offenses, and was a just punishment for his crimes. The district court further found that the defendant's criminal history demonstrated that a shorter period of imprisonment would likely be insufficient to deter him from further crimes.[3]

---

[3] The government had sought a term of imprisonment of at least ten years, and the defendant sought a term of imprisonment of 65 months, in part due to the fact that the defendant

(continued...)

The district judge commented on the calculation and planning that was involved in the commission of the offenses and that the crimes were not the result of accident.

## II. ANALYSIS

The parties are in agreement that when no procedural errors are raised, as the case in this appeal, this court applies an abuse of discretion standard of review. *United States v. Coopman*, 602 F.3d 814, 819 (7th Cir.) *cert. denied,* 131 S. Ct. 303 (2010).

The defendant characterizes the sentence imposed as one which was above the advisory Guidelines range, asserting that the district court imposed a twenty-five percent increase in the highest suggested term under the advisory Guidelines. In particular, the defendant asserts that the district court improperly imposed consecutive sentences on two of the aggravated identity theft convictions.

As stated above, the district court imposed a total sentence of 108 months, as set forth in the Judgment and Commitment Order. This sentence was comprised of 60 months on each of Counts 1-11, such terms to be served concurrently; 24 months on Count 12, to be served consecutively to the sentences imposed on Counts 1-11;

---

[3] (...continued)
had suffered a stroke, had a traumatic childhood, had cooperated with the government after his arrest and had indicated his remorse.

24 months on Count 13, to be served consecutively to the sentence imposed on Count 12; and 24 months on Counts 14-22 to be served concurrently with the sentence imposed on Count 13.

The defendant's assertion is that the 24-month consecutive sentences on each of Counts 12 and 13 for aggravated identity theft were improper and that they should have been concurrent sentences.[4] The crime of aggravated identity theft carries a two-year term of imprisonment under 18 U.S.C. § 1028(a)(1), and 18 U.S.C. § 1028A(b)(2) mandates that the two-year sentence is to run consecutively to the sentence for any other offenses. *See United States v. LaFaive*, 618 F.3d 613, 619 (7th Cir. 2010) (statutory scheme provides for mandatory consecutive sentence for aggravated identity theft convictions). Indeed, § 1028A(b)(2) provides that this two-year term shall not "run concurrently with any other term of imprisonment." However, the sentencing court has the discretion to impose terms of imprisonment that run concurrently for multiple convictions for the *same offense* of aggravated identity theft. The statute specifically provides for such concurrent terms of imprisonment *"only* with another term of imprisonment that is imposed by the court at the same time on that person for an additional violation of this section. . . ." 18 U.S.C. § 1028A(b)(4) (emphasis added).

---

[4] The court notes that the applicable advisory Guidelines range on Counts 1-11 was 63-78 months; therefore, the defendant's sentence on those counts was actually below the advisory Guidelines range.

Guideline § 2B1.6, Application Note 1(B) provides, "in the case of multiple convictions under 18 U.S.C. § 1028A, the term of imprisonment imposed on such counts may, in the discretion of the court, run concurrently, in whole or in part with each other." As further guidance, U.S.S.G. § 5G1.2, Application Note 2(B)(ii) provides that, "[g]enerally, multiple counts of 18 U.S.C § 1028A should run concurrently with one another in cases in which the underlying offenses are groupable under § 3D1.2." However, the sentencing court is also to consider the "nature and seriousness of the underlying offenses" and whether "the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) are better achieved by imposing a concurrent or consecutive sentence for multiple counts of 18 U.S.C. § 1028A." U.S.S.G. § 5G1.2, Application Notes 2B(i) and 2B(iii).

At sentencing, the district court, in fact, grouped the underlying counts under U.S.S.G. § 3D1.2. Although the aggravated identity theft counts, under the advisory Guidelines, are "generally" grouped as well under U.S.S.G. § 5G1.2, Application Note 2B(ii), district courts still have the discretion to impose consecutive sentences in light of the aggravating and mitigating factors even when the counts are groupable. *See, e.g., United States v. Kreitinger*, 576 F.3d 500, 504 (8th Cir. 2009) (holding that the consecutive sentence on an aggravated identity theft conviction was reasonable in light of the seriousness of the defendant's criminal history, ongoing nature of the crimes and serious likelihood of recidivism).

A sentencing court has discretion to make a sentence consecutive or concurrent. *See* 18 U.S.C. § 3584(a); *United*

*States v. Campbell*, 617 F.3d 958, 961 (7th Cir. 2010). In this case, the district court's decision to impose consecutive sentences for two of the eleven convictions for aggravated identity theft was reasonable in light of the facts of the case and was an appropriate exercise of discretion.

The district court noted at sentencing that at least one of the aggravated identity theft counts was to be imposed consecutively. Moreover, the district court was faced with sentencing the defendant for eleven counts of aggravated identity theft. Although the district court did not specifically mention the provisions of U.S.S.G. § 5G1.2, Application Note 2B(ii) ("Generally multiple counts of 18 U.S.C. § 1028A should run concurrently with one another in cases in which the underlying offenses are groupable under § 3D1.2"), any oversight of not addressing that specific provision was not reversible error.

The only question, then, is whether the sentence was reasonable in light of the sentencing factors of § 3553(a). It is well settled that on appeal this court presumes that a sentence within the advisory Guidelines range is reasonable and will reverse only for an abuse of discretion. *See United States v. Portman*, 599 F.3d 633, 636 (7th Cir. 2010). When imposing a sentence, the sentencing court is to consider and apply the factors of § 3553(a) which include:

> (1) the nature and circumstances of the offense; (2) the history and characteristics of the defendant; (3) the need to deter future crime, protect the public, and provide the defendant with necessary services such

as vocational training and medical care; (4) the Sentencing Commission's recommendations regarding the sentencing range; (5) the Sentencing Commission's policy statements; and (6) the need to avoid unwarranted sentencing disparities.

*United States v. Snyder*, 2011 WL 923502,*2 (7th Cir. Mar. 18, 2011). Although the district judge is not required to make factual findings as to each of the above factors, the record on appeal should reveal that the district judge considered the factors. *United States v. Neal*, 512 F.3d 427, 438 (7th Cir. 2008) (cited in *Snyder*, 2011 WL 923502, at *2). In addition, the district court must "start by using the Guidelines to provide a benchmark that curtails unwarranted disparities." *United States v. Kirkpatrick*, 589 F.3d 414, 416 (7th Cir. 2009).

The defendant asserts that the sentence of 108 months was unreasonable because it was a higher sentence than necessary to meet the standards of § 3553(a). In this case, the district court throughly and meaningfully analyzed the factors of § 3553(a) and there is no evidence that there was error in that analysis. The district court discussed the nature and circumstances of the offenses, including the planning involved, the number of victims, the impact on the victims, the harm to society from the actions of the defendant in this conspiracy, the need to punish the defendant for his crimes, and the need for a period of incarceration that would deter the defendant and others from the commission of similar criminal activity in the future. "[W]e regularly affirm sentences where the district judge does not explicitly mention each mitigation argument raised by the defendant.

Indeed, sentencing judges must only demonstrate meaningful consideration of § 3553(a) factors." *United States v. Paige*, 611 F.3d 397, 398 (7th Cir. 2010). The district court noted that the defendant targeted his victims, recruited others to assist him in his crimes, and, in light of the documents found at the time of the execution of the arrest, would have been likely to continue his criminal activities with the "filing cabinet full of documentation" on future victims.

The defendant asserts that the district court failed to consider his mitigating factors, including: his childhood trauma, cooperation with the authorities, his stroke and the resulting physical impairments, and his apologies to the district court. The court notes, however, that the district court, in sentencing, did take note of the defendant's physical impairments, recognizing that the Bureau of Prisons has facilities which could accommodate his needs. Further, the district court clearly addressed and dismissed the defendant's expressions of remorse as not credible. The fact that the district court did not mention the defendant's childhood trauma or cooperation specifically is not error. *See United States v. Vallar*, 2011 WL 488877, *2 (7th Cir. Feb. 14, 2011) (where the court noted: "The district court addressed the majority and strongest of [defendant's] arguments. That the district court did not explicitly discuss each of [defendant's] weaker arguments does not constitute reversible error . . . ."); *Neal*, 512 F.3d at 438. Although this court has stated this principle before, it bears repetition here: When a district judge makes an adequate, thoughtful analysis of the sentencing factors vis-à-vis the facts of the

case, and the district judge makes it clear, on the record, that in reaching the final sentence, he has *considered* the applicable sentencing factors, and the arguments made by the parties, the sentencing judge has, then, satisfied the review standards which must be met. It is simply not required that the sentencing judge tick off every possible sentencing factor or detail and discuss, separately, every nuance of every argument raised for this court to find that the sentence was proper. *See, e.g., Snyder*, 2011 WL 923502; *Vallar*, 2011 WL 488877; *Paige*, 611 F.3d 397; *Neal*, 512 F.3d 427.

In light of the record as a whole, this court finds that the district court properly calculated the defendant's guideline range at a level 22, criminal history category IV, which resulted in a range of 63-78 months. With the imposition of two mandatory 24-month concurrent sentences, the imposition of a sentence of 108 months was actually below the advisory Guidelines range of 111-126 months for these offenses, and therefore, was reasonable.

### III. CONCLUSION

The district judge properly considered the § 3553(a) sentencing factors and imposed an appropriate, reasonable sentence in this case. We therefore AFFIRM the sentence the district court imposed upon defendant Collins.