In the

# United States Court of Appeals
## For the Seventh Circuit

───────────────

Nos. 14-1278 and 14-1100

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GUSTAVO BUENROSTRO and AMBROSIO MEDRANO,

*Defendants-Appellants.*

───────────────

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 00487 — **John J. Tharp, Jr.**, *Judge.*

───────────────

ARGUED SEPTEMBER 8, 2014 — DECIDED MARCH 26, 2015

───────────────

Before WOOD, *Chief Judge*, and POSNER and HAMILTON,
*Circuit Judges*.

HAMILTON, *Circuit Judge*. Gustavo Buenrostro and Ambrosio Medrano were each convicted of conspiracy to commit bribery, and each now appeals his conviction. We affirm. The convictions stem from a scheme to bribe a local official in California to obtain a government contract. The local offi-

cial was fictional, however, invented by the FBI as part of an undercover government sting operation. The sting operation reached its denouement when a bribery check was handed to an undercover agent, and Buenrostro and Medrano were charged for their roles in the scheme.

A third defendant was also charged with conspiracy: James Barta. Like Buenrostro and Medrano, Barta was tried and convicted. Barta argued on appeal that he was entrapped into the conspiracy. We resolved his appeal in a separate opinion concluding that he had been entrapped as a matter of law. See *United States v. Barta*, 776 F.3d 931 (7th Cir. 2015). Neither Buenrostro nor Medrano argued (or could have argued) an entrapment defense, but each challenges his conviction on other grounds. Both Buenrostro and Medrano argue that there was not sufficient evidence of the financial elements of the federal bribery statute to support treating their conspiracy as a federal crime. Medrano also argues that his sentence is substantively unreasonable.

I.   *Factual Background*

This sting operation began, as many do, with a criminal turned cooperating witness. One Michael DiFoggio worked as a cooperating witness for the FBI in exchange for a promise that the government would recommend a lesser sentence in his tax evasion case. DiFoggio introduced Medrano to a man purporting to be a health care consultant named George Castro. Castro told Medrano that in return for payment of a bribe to a corrupt official, he could obtain contract approval from Los Angeles County for the purchase of medical bandages for its hospital system. In reality "Castro" was an undercover FBI agent and there was no corrupt official. Medrano did not know this, of course, so when the medical

bandages deal was concluded, he approached Castro about making another deal.

On that next deal—the one at issue here—Medrano teamed up with his old friend Buenrostro. Buenrostro and the undercover "Castro" eventually brought Barta into the discussions. Over the course of several meetings, the deal began to take shape. A bribe would be paid to the corrupt official by way of Castro (who would also take a piece of the bribe for himself). In exchange for the bribe, Castro and the corrupt official would ensure that Los Angeles County would award a contract for providing pharmaceutical dispensing services to Sav-Rx, a prescription benefit management company founded by Barta. Sav-Rx would service the contract by partnering with a business started by Buenrostro and Medrano specifically for that purpose.

At the last meeting in the course of the conspiracy, Barta wrote a check for $6,500 to Castro. This constituted Barta's 65 percent share of the $10,000 bribe demanded by Castro (and the fictional corrupt official) to secure contract approval. Buenrostro and Medrano were to pay their 35 percent share to Castro sometime shortly after that last meeting. Before that could happen, all three defendants were arrested. Further background on the bribery scheme can be found in the *Barta* opinion, but any facts important to Buenrostro and Medrano's appeals are included in this opinion.

II. *Analysis*

Buenrostro and Medrano were convicted of violating 18 U.S.C. § 371, which prohibits conspiracies "to commit any offense against the United States." Defendants were charged with conspiring to commit bribery under 18 U.S.C. § 666,

which makes bribery a federal crime but only under certain circumstances. Buenrostro and Medrano both contend that the government failed to present evidence sufficient to prove beyond a reasonable doubt that they conspired to commit bribery under the circumstances required to qualify as a federal crime under § 666. Assessing this claim requires us to parse the ponderous language of § 666.

Section 666(a)(2) prescribes penalties for anyone who "corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more." Subsection 666(b) adds a further requirement, that "the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance."

Both Buenrostro and Medrano argue that the government failed to present sufficient evidence that the pharmaceutical dispensing contract they aimed to win by bribing the corrupt official should be valued at $5,000 or more. They also attack the sufficiency of the evidence to show that the corrupt official was an agent of an entity receiving over $10,000 per year in federal benefits. Finally, Medrano argues that the 30-month prison sentence he received is substantively unreasonable. (Buenrostro does not challenge his sentence.) We address these arguments in turn.

A. *Sufficiency of the Evidence*

"We will overturn a verdict for insufficiency of the evidence only if, after viewing the evidence in the light most favorable to the government, the record is devoid of evidence from which a rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Reed*, 744 F.3d 519, 526 (7th Cir. 2014). A jury was instructed as to all the elements of 18 U.S.C. § 666, and in convicting Buenrostro and Medrano it found that the government proved each of these elements beyond a reasonable doubt. We hold that the government presented sufficient evidence to support the verdicts.

1. *The $5,000 Element*

The $5,000 element of § 666 pertains to "the *subject matter* of the bribe," which "must be valued at $5,000 or more." *United States v. Robinson*, 663 F.3d 265, 271 (7th Cir. 2011). In other words, the "'business' or 'transaction' sought to be influenced must have a value of $5,000 or more." *Id.*, quoting 18 U.S.C. § 666(a)(2). In this case the business or transaction sought to be influenced—the subject matter of the bribe— was the fictional pharmaceutical dispensing contract.

The simplest indicator that the object of the conspiracy was a fictional contract with a value of at least $5,000 is that the conspirators were willing to pay a $10,000 bribe to win it. This common-sense observation is based "on the theory that the benefit is worth at least what the bribe-giver was willing to pay for it." *Id.* at 275 (citing cases). *Robinson* endorsed this theory in holding that "the amount of the bribe may suffice as a proxy for value; at least it provides a floor for the valuation question." *Id.*

Buenrostro and Medrano counter this obvious point by arguing that Barta gave the $6,500 check to Castro only as a favor to his old friend Buenrostro, not because the contract had a value of $5,000 or more. There are two problems with this argument.

First, this is at best "an argument for the jury at trial, not for us on appeal. We do not reweigh the evidence or make our own credibility determinations." *United States v. Farmer*, 717 F.3d 559, 563 (7th Cir. 2013). Even if we might be persuaded by this improbable version of events, the jury was not. An inquiry into the sufficiency of the evidence "does not ask what we would have decided if we were on the jury. We need not be convinced by the evidence ourselves. Our inquiry is whether a reasonable jury considering the evidence in the light most favorable to the government could have found each element of the offense beyond a reasonable doubt." *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013).

Second, quite apart from the agreed amount of the bribe, there was ample evidence to support the jury finding on the $5,000 element. For example, Medrano repeatedly said he was ready to move to Los Angeles if that was needed to win and retain the contract. A reasonable jury could certainly infer that Medrano would not have even considered this possibility if he had thought the contract was worth less than $5,000.

Buenrostro and Medrano argue that the government should not have relied on subjective evidence about the value of the fictional contract to the conspirators to prove the $5,000 element since the contract had a market value that should be proved objectively. They cite no decision that has endorsed this proposition, however, which is not surprising.

The notion of objective evidence to substantiate the value of a fictional deal where no contract was actually signed is elusive, to say the least. It is reminiscent of the philosophical problems posed by asking whether the statement "The present King of France is bald" is true, false, or meaningless when there is no present King of France. See Bertrand Russell, *On Denoting*, 14 Mind 479 (1905).

Nevertheless, the evidence supports a finding that the conspirators agreed to pay a bribe to win a contract that would have been worth much, much more than $5,000. "Another approach to valuing the subject matter of the bribe is by looking to the value of the benefit the bribe-giver will receive if the bribe is successful." *United States v. Owens*, 697 F.3d 657, 659 (7th Cir. 2012). Castro and the conspirators expected the contract to call for dispensing a million or more prescriptions per year for at least two or three years. The benefit received by the defendants per prescription would have needed to be astoundingly low for dispensing this volume of prescriptions not to have proven quite beneficial. Christy Piti, who is Barta's daughter and the current head of Sav-Rx, testified that this hypothetical contract was highly unrealistic and thus would have been of no benefit to the defendants. But the jury was not required to credit her testimony on this point, particularly because it would have rendered Buenrostro and Medrano's dogged pursuit of the contract a complete mystery. In sum, sufficient evidence supports the jury finding that the $5,000 element was satisfied beyond a reasonable doubt.

2. *The $10,000 Element*

Subsection 666(b) requires the person being bribed to be an agent of an organization, government, or agency that re-

ceives more than $10,000 in federal funds or other benefits in one year. For purposes of this provision, an agent is defined as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." 18 U.S.C. § 666(d)(1). At trial the parties stipulated that Los Angeles County received more than $10,000 in federal funds in the relevant period. The issue we must decide is whether a reasonable jury could have found beyond a reasonable doubt that the fictional official was an agent of Los Angeles County.

Since the official was fictional, the only evidence the jury had to make this determination is how Castro and the conspirators described the official during their conversations. At one point Castro described his contact, the corrupt official, as "a high ranking official at the county system." This description seems to favor the government. But Buenrostro argues that at another point Castro made clear that "county system" was shorthand for the Los Angeles County Department of Health Services.

Buenrostro and Medrano reason that if the corrupt official was an agent of the Los Angeles County Department of Health Services, then the $10,000 element cannot be satisfied because the government introduced no evidence specific to that department's receipt of federal funds or other benefits. Evidence in the record that the fictional official was an agent of the Los Angeles County Department of Health Services as distinct from Los Angeles County is sparse, but so is evidence pointing the other way. In light of the government's burden of proof, this might seem to spell trouble for the gov-

ernment. Cf. *United States v. Johnson*, 592 F.3d 749, 755 (7th Cir. 2010) ("In this situation, the evidence is essentially in equipoise; the plausibility of each inference is about the same, so the jury necessarily would have to entertain a reasonable doubt on the conspiracy charge.").

But the problem for Buenrostro and Medrano is that their argument depends on an unstated assumption: that if the corrupt official was an agent of the Los Angeles County Department of Health Services, then he could not also have been an agent of Los Angeles County. That assumption is faulty. Neither common sense nor case law supports it.

Employees are included in the statutory definition of agents in 18 U.S.C. § 666(d). A reasonable jury could infer that people working for the Los Angeles County Department of Health Services are also employees of Los Angeles County. Prior cases have already held that the Oklahoma Deputy State Treasurer was an agent not only of the Treasurer but also of the State of Oklahoma itself, see *United States v. Pretty*, 98 F.3d 1213, 1218–19 (10th Cir. 1996), and that an employee and agent of the Indiana Department of Transportation Toll Road Division was also an employee and agent of the Indiana Department of Transportation, see *United States v. Agostino*, 132 F.3d 1183, 1193–94 (7th Cir. 1997). In a hierarchy of governmental entities, a single person can be deemed an employee and/or agent of entities at multiple levels.

The cases that Buenrostro and Medrano cite are easily distinguishable because local law in those cases meant that the defendant was not an employee (or otherwise an agent) of the entity receiving more than $10,000 in federal funds (or other benefits). See *United States v. Phillips*, 219 F.3d 404, 412 (5th Cir. 2000) (under Louisiana law, tax assessor was not an

employee or agent of the local government body receiving the requisite federal funds); *United States v. Sunia*, 643 F. Supp. 2d 51, 68 (D.D.C. 2009) (defendants in the legislative branch of the American Samoan government were not employees or agents of the executive branch agencies receiving the requisite federal funds).

There is also abundant evidence in the record that, regardless of which entity or entities employed the fictional corrupt official, the conspirators reasonably believed Castro's claims that the official could act on behalf of Los Angeles County. The allure of the deal and the reason for paying the agreed bribe were precisely that this corrupt official could guarantee approval for the sizeable contract by the county's Board of Supervisors. And by definition, a person qualifies "as an agent of an entity" when he is "authorized to act on behalf of that entity." *United States v. Keen*, 676 F.3d 981, 990 (11th Cir. 2012). The jury heard sufficient evidence to support its finding that the $10,000 element was satisfied beyond a reasonable doubt.

B. *Medrano's Sentence*

Medrano argues that the 30-month prison sentence he received is substantively unreasonable. At the time of sentencing in this case, Medrano had just been sentenced to a 126-month prison term in a separate case in the Northern District of Illinois. Medrano urged the district judge here to make his sentence in this case concurrent to the 126-month sentence. The district judge decided instead that a consecutive sentence of 30 months, which was well below the guideline range for this offense, was needed to serve the purposes of sentencing.

As a general rule, a "sentencing court has discretion to make a sentence consecutive or concurrent" to an earlier sentence. *United States v. Collins*, 640 F.3d 265, 270 (7th Cir. 2011). Medrano acknowledges this point but asserts that the district judge abused his discretion in imposing a consecutive sentence in this case. We find no abuse of discretion, but a thoughtful and measured decision by Judge Tharp.

Medrano cites a case where a sentence was vacated because a district court "failed to address the principal argument" made by the defendant, which was an argument for a concurrent sentence. *United States v. Jackson*, 546 F.3d 465, 472 (7th Cir. 2008). Despite his repeated insistence that a concurrent sentence was appropriate in this case, Medrano contends, "the court barely addressed that argument, let alone gave it any thoughtful consideration." This is an unfortunate distortion of what happened at sentencing.

Judge Tharp said that the "fundamental question in this case" was "how much of the sentence should be served concurrently or how much of the sentence should be served consecutively to the term of imprisonment that Mr. Medrano is already facing." Ultimately, the judge answered that question by deciding that there should be a "marginal increase in the penalty imposed as a result of an entirely different scheme for which he was convicted."

The judge stated clear reasons for imposing a below-guideline but consecutive sentence. He found that Medrano instigated the scheme and was therefore the most culpable of the defendants. He also pointed out that Medrano had an unusually long history of public corruption offenses: "as an elected official, as a government employee, and now as a member of the general public offering bribes to other elected

officials." And he found that a consecutive sentence would promote general deterrence since it would send the message that there is no "free pass" simply because you are already facing another sentence for a separate crime. Cf. *United States v. Conley*, 777 F.3d 910, 916 (7th Cir. 2015) (affirming consecutive sentence after observing that a defendant making a similar argument was in effect arguing for a free pass for the offense of conviction).

To be sure, consecutive sentences are not required or even appropriate in all cases. District judges are generally entrusted with the discretion to decide this question on a case-by-case basis in light of the multiple and sometimes contradictory goals of federal sentencing. Here Judge Tharp addressed the main arguments made by Medrano. He found that Medrano would be unlikely to commit further crimes upon release from prison, mitigating any need for specific deterrence. He acknowledged that Medrano had health problems but found that the Bureau of Prisons had adequate treatment programs in place. He explained that Medrano received a longer sentence than Buenrostro and Barta based on his greater culpability and his unusual history of multiple corruption convictions. The transcript of the sentencing hearing reflects the thought and care that Judge Tharp put into crafting this sentence. When sentencing discretion is exercised as carefully as it was in this case, there is no basis for us to disturb the result.

Medrano mounts one last attack on his consecutive sentence. He argues that the district judge abused his discretion by not addressing specifically or sufficiently each of the sentencing factors listed in 18 U.S.C. § 3553 and U.S.S.G. § 5G1.3(b). The 74-page transcript of the sentencing hearing

shows that Judge Tharp's discussion of the sentencing factors was much more thorough than Medrano portrays it to be. Moreover, a sentencing judge simply is not required to "tick off every possible sentencing factor or detail and discuss, separately, every nuance of every argument raised … ." *Collins*, 640 F.3d at 271. The district court committed no procedural or substantive error in sentencing Medrano.

The district court's judgments are AFFIRMED.