In the

# United States Court of Appeals

### For the Seventh Circuit

No. 14-3103

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

WILLIE JONES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 469 — **Milton I. Shadur**, *Judge.*

ARGUED APRIL 23, 2015 — DECIDED JULY 9, 2015

Before BAUER and SYKES, *Circuit Judges,* and REAGAN, *Chief District Judge.*[*]

BAUER, *Circuit Judge.*   On April 26, 2012, defendant-appellant, Willie Jones, was charged with ten counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1).

---

[*] The Honorable Michael J. Reagan, Chief Judge of the United States District Court for the Southern District of Illinois, sitting by designation.

On March 7, 2014, Jones pleaded guilty to one count of bank fraud and the aggravated identity theft count, without a plea agreement. On September 19, 2014, the district court sentenced Jones to a term of 184 months' imprisonment. Jones now challenges his sentence on appeal.

## I. BACKGROUND

Beginning in April 2008, Jones and co-defendant, Darrell Jackson, devised and executed a scheme to steal personal information from victims to create counterfeit driver's licenses and checks in order to defraud banks. Jones and Jackson stole the personal information by pickpocketing wallets and by purchasing stolen wallets. They used the stolen personal information to make fraudulent identification documents, using a computer to take photographs and then place each photograph on a digital template for a state identification card. This method produced at least sixty counterfeit identification documents of at least sixty individuals. Jones and Jackson also pickpocketed checkbooks or purchased stolen checkbooks belonging to at least twenty-six individuals.

Next, Jones and Jackson (and others directed by them), forged signatures on the stolen checks, making them payable to individuals matching the fraudulent identification documents. Intermediaries known as "writers" would then present the forged checks and fraudulent documents to banks to withdraw cash. Jones himself never presented any checks to banks; instead, he would drop off the writer and wait outside in his vehicle for their return. On a typical day, Jones and his writers would visit multiple banks, cashing multiple checks against the same account using the same counterfeit identifi-

cation documents. At the final bank stop, a writer would withdraw cash directly from the victim's account. The scheme continued until March 2011 and resulted in a loss amount of approximately $770,000.

Jones's role in the scheme was a significant one; he recruited all but two of the eight writers and trained all of them. He furnished them with fraudulent IDs and secondary information about their victim account holders. He decided which banks to target and provided transportation to and from the banks. Jones also decided how to divide the proceeds of the fraud amongst the participants. On occasion, he would keep a larger share of the proceeds for himself.

On April 26, 2012, an indictment issued charging Jones with ten counts of bank fraud in violation of 18 U.S.C. § 1344 and one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). Jones pleaded not guilty and was released on bond. While on bond, Jones was arrested again for stealing wallets and making fraudulent purchases using the credit cards from the stolen wallets. On February 14, 2013, the district court revoked Jones's bond based on the arrest.

On March 7, 2014, Jones pleaded guilty, without a plea agreement, to Count One of the indictment (one of the bank fraud counts) and to Count Ten (the aggravated identity theft count). The district court also accepted the guilty pleas of co-defendants Jackson, Ilene Foster, and Jazmon Norsworthy, pursuant to plea agreements.

At Jones's sentencing hearing on September 19, 2014, the district court heard testimony from Foster, Jackson, and Sergeant Christopher Burne, who each testified to Jones's

involvement in the scheme. Based on their testimony, and testimony from Jones, the district court found that Jones had twelve criminal history points and applied several enhancements to his offense level. The enhancements included a four-level enhancement for possession or use of device-making equipment and the production of counterfeit devices, a two-level enhancement for an offense involving more than fifty victims, and a four-level enhancement based on a finding that Jones was a leader or organizer of criminal activity involving five or more participants.

In light of the enhancements, criminal history points, and mitigating factors, the district court calculated Jones's Guidelines range as 151–188 months as to Count One and imposed a within-range sentence of 160 months' imprisonment. The court also imposed the statutorily-mandated consecutive 24-month term of imprisonment for the aggravated identity theft conviction on Count Ten of the indictment. On September 23, 2014, Jones appealed.

## II.  DISCUSSION

Jones challenges his sentence only. He makes five arguments: (1) the district court abused its discretion in sentencing him to a longer sentence than Jackson in violation of § 3553(a)(6); (2) the district court improperly enhanced his sentence under United States Sentencing Commission Guidelines Manual ("U.S.S.G.") § 2B1.1(b)(11) based on his possession or use of device-making equipment; (3) the district court erred in applying the U.S.S.G. § 2B1.1(b)(2)(B) enhancement for offense conduct involving more than fifty victims; (4) the district court incorrectly enhanced his sentence under U.S.S.G.

§ 3B1.1 after concluding he acted as an organizer or leader of the scheme; and (5) Jones challenges his sentence as a general matter, arguing that the district court abused its discretion by imposing an unreasonable sentence.

We review the district court's factual determinations at sentencing for clear error, *United States v. Walsh*, 723 F.3d 802, 807 (7th Cir. 2013); whether those facts support an enhancement is reviewed *de novo*, *United States v. Pabey*, 664 F.3d 1084, 1094 (7th Cir. 2011). We review the district court's procedural compliance with § 3553(a) *de novo* and the reasonableness of the sentence for an abuse of discretion. *United States v. Grigsby*, 692 F.3d 779, 791 (7th Cir. 2012).

## A. Sentencing Disparities Pursuant to § 3553(a)(6)

Jones argues that the district court's failure to consider co-defendant Jackson's sentence while sentencing Jones was error in light of § 3553(a)(6).

Section 3553(a)(6) provides that the sentencing court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct" in determining a defendant's sentence. 18 U.S.C. § 3553(a)(6). But nothing in § 3553(a)(6) precludes sentencing disparities based on differences in offense conduct amongst co-defendants. Indeed, "a sentencing *difference* is not a forbidden 'disparity' if it is justified by legitimate considerations, such as rewards for cooperation," *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006), "or is the result of statutory authorization." *United States v. Duncan*, 479 F.3d 924, 929 (7th Cir. 2007).

During Jones's sentencing hearing, the district court explicitly addressed the need to avoid unwarranted sentencing disparities under § 3553(a)(6) and also determined that Jones and Jackson deserved different sentences based on their differing conduct. At sentencing, Foster's testimony described Jones's role directing all but two of the eight writers, as well as his role in recruiting them. Jackson recruited and directed only two writers. Additionally, Jones managed Foster, who in her capacity as a writer was responsible for the greatest percentage of loss; she fraudulently obtained approximately $600,000 of the $770,000 total. Finally, Jackson chose to cooperate with the government, while Jones did not. These differences in conduct support disparate sentences. Therefore, the district court followed § 3553(a) and acted within its discretion in imposing Jones's sentence.

### B. Possession or Use of Device-Making Equipment and Production of Counterfeit Access Devices Enhancement

U.S.S.G. § 2B1.1(b)(11) requires a two-level enhancement for a finding that an offense involved "(A) the possession or use of any (i) device-making equipment, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C)(i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification … ." The district court imposed the two-level enhancement after finding that Jones produced fake IDs using his computer and a computer-based template.

On appeal, Jones challenges the application of U.S.S.G. § 2B1.1(b)(11), arguing that our decision in *United States v. Doss*, 741 F.3d 763 (7th Cir. 2013), precludes imposition of the U.S.S.G. § 2B1.1(b)(11) enhancement. *Doss* holds that Application Note 2 to U.S.S.G. § 2B1.6 precludes the imposition of the possession or use of device-making equipment and production of counterfeit access devices enhancement on the basis of trafficking where the trafficking also constituted a transfer of a means of identification. *Doss*, 741 F.3d at 767–68. But this restriction is irrelevant where, as here, possession or production acts as the basis for the enhancement, rather than trafficking. Jones possessed device-making equipment[1]—his computer equipped with state identification templates—and he used that equipment to produce fake IDs for his writers. Under these facts, the district court did not err in imposing U.S.S.G. § 2B1.1(b)(11)'s two-level enhancement.

## C. Victim Enhancement

The district court enhanced Jones's offense level by four points pursuant to U.S.S.G. § 2B1.1(b)(2)(B) based on its finding that there were at least fifty victims of Jones's scheme. Jones concedes that over fifty individuals and banks lost money due to his misconduct. Of that group, all but nine were

---

[1] "Device-making equipment" is defined as "any equipment, mechanism, or impression designed or primarily used for making an access device or a counterfeit access device." 18 U.S.C. § 1029(e)(6); U.S.S.G. § 2B1.1(b)(11) cmt. 9(A). An "access device" means "any card … or other means of account access that can be used, alone or in conjunction with another access device, to obtain money … ." 18 U.S.C. § 1029(e)(1).

eventually reimbursed; Jones argues that only those nine should be counted as "victims" for purposes of the enhancement because the eventual reimbursement negated the victim status of the rest. Jones's argument is foreclosed by our decision in *United States v. Panice*, 598 F.3d 426 (7th Cir. 2010), in which we held "victim" includes a person whose losses were reimbursed. *Id*. at 433. Moreover, Application Note 4(E) to U.S.S.G. § 2B1.1(b)(2) specifies that "victim" includes "any individual whose means of identification was used unlawfully or without authority," regardless of whether actual loss occurred. U.S.S.G. § 2B1.1(b)(2), cmt. n.4(E). The district court therefore did not err in counting reimbursed individuals as "victims" and imposing U.S.S.G. § 2B1.1(b)(2)(B)'s four-level enhancement.

### D. Organizer or Leader Enhancement

Jones also contends that the district court erroneously applied a four-level enhancement based on Jones's role as an organizer or leader. The crux of Jones's argument is that because he and his co-defendant, Jackson, were equally culpable in the offense, it was inappropriate for the district court to impose the four-level organizer/leader enhancement on Jones, while only imposing the three-level manager/ supervisor enhancement on Jackson. First, as a factual matter, Jones's argument mischaracterizes the record. Although the district court acknowledged that Jones and Jackson committed similar conduct, the court still found that Jones acted as more of a leader than Jackson in light of Jones's more active recruitment and interaction with writers. *See supra*, Part II.A. Second, comparison to Jackson notwithstanding, Jones's conduct qualifies for the enhancement in its own right: Jones

interacted with and directed writers; Jones recruited all but two of the writers; Jones trained the writers; Jones chose which account holders and banks to target; and Jones provided his writers with the fake identification documents needed to access accounts. Third, insofar as Jones's argument suggests that there may only be a single leader in a scheme, that is simply untrue. "There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy." U.S.S.G. § 3B1.1, cmt. n.4. For these reasons, the district court did not err in imposing the four-level leader/organizer enhancement.

### E. Unreasonable Sentence

The district court calculated Jones's Guidelines range to be 151–188 months, and sentenced him to a term of 160 months' imprisonment, followed by a mandatory two years' imprisonment for the aggravated identity theft conviction. Jones argues his sentence is unreasonable in light of the § 3553(a) factors because the district court failed to give meaningful consideration to mitigating factors and relied too heavily on Jones's criminal history. "It is well settled that on appeal this court presumes that a sentence within the advisory Guidelines range is reasonable and will reverse only for an abuse of discretion." *United States v. Collins*, 640 F.3d 265, 270 (7th Cir. 2011). The defendant bears the burden of overcoming the presumption. *United States v. Blue*, 453 F.3d 948, 952 (7th Cir. 2006).

Jones has not met his burden. Contrary to Jones's assertion, the district court considered the relevant § 3553(a) factors on the record, including mitigating factors. The court specifically

acknowledged Jones's community work and considered letters attesting to Jones's good character. The court also considered the nature of the offenses, the impact on the victims, as well as Jones's criminal history, which included Jones's arrest for similar misconduct while out on bail for the instant offenses. The district court is not required to make factual findings as to each § 3553(a) factor, but the record on appeal should reveal that the district court considered the factors. *See Collins*, 640 F.3d at 270. So it is here; the district court properly considered the § 3553(a) factors and the within-Guidelines sentence it imposed is reasonably related to those factors.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the sentence the district court imposed upon Jones.